Rollin E. McKim and Vida L. McKim v. Commissioner.
McKim v. Commissioner
Docket No. 67501.
United States Tax Court
T.C. Memo 1958-154; 1958 Tax Ct. Memo LEXIS 74; 17 T.C.M. (CCH) 767; T.C.M. (RIA) 58154; August 13, 1958
*74 Held, that petitioners have failed to establish the amount of an alleged loss resulting from a transfer of property to a newly formed corporation in exchange for stock, and for a contract of employment, and an option to return such stock to the corporation and get back such assets if a certain contract for laundry and dry cleaning at Hunter Air Force Base was not procured for the corporation, or was terminated within six months. Held, further, that petitioners have failed to meet the burden of proving error in respondent's determination of additions to tax under section 293(a), 294(d)(1)(A), and 294(d)(2). Louis A. Thompson, Esq., 301 Morel Building, Savannah, Ga., for the petitioners. James E. Johnson, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined an income tax deficiency and additions to tax of the petitioners as follows: Additions to Tax under
Sec.
Sec. 294
Sec. 294
Year
Deficiency
293(a)
(d)(1)(A)
(d)(2)
1953
$2,012.68
$100.63
$200.88
$133.92
The principal issue is whether Rollin E. McKim has established the amount of a loss, if any, *75 upon the transfer by him of the assets of a laundry and dry cleaning business to a newly formed corporation in exchange for stock, a contract of employment, and the option to rescind the transaction in the event that a contract for the laundry and dry cleaning concession at an air base was not procured for such corporation or was terminated within six months. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioners are husband and wife who reside in Savannah, Georgia. They filed a joint income tax return for the taxable year 1953 with the director of internal revenue for the district of Georgia. Prior to March 1, 1953, Rollin McKim (hereinafter referred to as McKim or petitioner) owned and operated, as a sole proprietorship, a laundry and dry cleaning business in Savannah, Georgia, under the name of Crystal Cleaners. Although McKim's patrons were primarily residents of Savannah, he had been obtaining considerable business through indirect solicitation from customers at Hunter Air Force Base near Savannah. On February 1, 1953, he was notified by the authorities at Hunter Air Force Base that he would not be permitted to *76 continue to have business solicited on his behalf at the base since J. E. Bowen had the laundry and dry cleaning contract at Hunter Field. J. E. Bowen owned and operated a laundry and dry cleaning plant at Statesboro, Georgia, approximately 53 miles from Savannah. Bowen also had the contract with the post exchange at Hunter Field for the laundry and dry cleaning concession there. Bowen did not have complete equipment at Hunter Field and it was necessary for him to take some clothes to his Statesboro plant to be processed and returned to his patrons at Hunter Field. This necessarily involved extra time and expense. Bowen's contract, which he had held with the base officials since 1943, granted him a monopoly by prohibiting any competition on the base. This contract was nontransferable. McKim was interested in obtaining the dry cleaning and laundry business at the base and had discussed this with officials of the post exchange. The acquisition of this business would have economically benefited McKim. In February 1953, petitioner and Bowen organized the M. C. Cleaning Corporation with an authorized capital stock of $30,000, with a par value of $100 per share. On March 1, 1953, petitioner *77 conveyed the Crystal Cleaners business and equipment to the newly organized corporation in exchange for $14,900 par value of its capital stock and certain agreements referred to infra. The equipment transferred by McKim to the new corporation had an adjusted basis or book value of $22,289.44 at the date of the exchange. In addition to the stock that he received, McKim was given a guaranteed contract of employment as general manager of the corporation and had an option to have said equipment reconveyed to him if a contract to be procured by Bowen for the corporation with Hunter Air Force Base should be terminated within six months after the transfer of the property and stock or if Bowen failed to procure the contract within six months of the formation of the corporation. At the same time, Bowen conveyed the business operated by him at Hunter Field to the new corporation. The equipment conveyed had an adjusted basis of $3,900 at the date of the exchange. He received $15,100 par value stock of the new corporation. As part of the transaction, Bowen agreed to secure a new contract at Hunter Field for the M. C. Cleaning Corporation like that which he himself had at the time. Petitioner *78 and Bowen were not related to each other. They had no business or social contacts before entering into the discussions on forming the M. C. Cleaning Corporation. At the organizational meeting of the M. C. Cleaning Corporation, the parties made no attempt to place a fair market value on the assets transferred to the new corporation or the contract to be procured for it by Bowen. Both Bowen and McKim felt that the business venture would reap a mutual profit and both were satisfied with the arrangements made. Petitioner claimed a loss of $7,389.44 on his 1953 joint return as a result of the formation of the M. C. Cleaning Corporation. The loss was computed by subtracting the par value of the stock he received from the book value of the assets he transferred. At the trial, petitioner claimed a total loss of $14,289.44. He arrived at this figure on the basis of the following computation: Book value of property transferred
$22,289.44
Less: Value of stock received
8,000.00
$14,289.44
Petitioners have failed to establish the amount of their alleged loss resulting from a transfer of property by McKim to the M. C. Cleaning Corporation in exchange for stock in *79 that corporation, and, in addition, a contract of employment by the corporation and an option to return his stock to the corporation and get back his assets if Bowen failed to procure for the corporation a contract "like" that which Bowen then had, or if such contract were terminated within six months. Opinion Petitioner contends that the transaction in dispute resulted in a recognized loss, the amount of which is also in issue. Respondent, in his statutory notice, disallowed the claimed loss and determined that the transaction was one in which no gain or loss is to be recognized under the provisions of section 112(b)(5) of the Code of 1939. [1]
*80 The burden of proof rests with petitioner to show error in respondent's determination. In the instant case, to meet his burden, he must establish the inapplicability of section 112(b)(5), and also establish the amount of his loss. Since, for the reasons set forth infra, we hold that petitioner has failed to establish the amount of his loss, if any, we find it unnecessary to consider the applicability, vel non, of section 112(b)(5). It is clear from the record that petitioner recognized his burden in both respects. In determining whether or not petitioner has established the amount of his loss, if any, we think we must infer, under the circumstances here presented, and for the purposes of this discussion, that the stock received by petitioner, and also that received by Bowen, was worth, as a minimum, its par value, or $14,900 as to petitioner, and $15,100 as to Bowen. The laws of Georgia provide that, unless restricted by charter or bylaws, par value stock can be issued only when money, property, or services of at least equivalent value have been transferred to the corporation. [2] There is no evidence in this case of any charter or bylaw restrictions. *81 There is no basis in the record before us by which we may limit the amount by which the value of the stock received by petitioner may have exceeded $14,900. Likewise, there is no basis on which we may hold that there was no such excess value. The elements from which the value of his equity (and that of Bowen) might be determined are the value of the physical assets turned over to the corporation by petitioner and Bowen, the good will or going concern value of each of the two businesses transferred to the corporation, and the value of the contract with Hunter Air Force Base which Bowen agreed to procure, which contract was a vital part of the arrangement and a substantial part of the basis for the issuance of stock to Bowen. It was stipulated that the physical assets transferred by petitioner to the corporation had an adjusted basis of $22,289.44. He estimated that the market value was about $18,000. There is nothing to indicate that this figure was the result of a careful analysis or appraisal, and there is no supporting explanation. It was also stipulated that the equipment turned over to the corporation by Bowen had an adjusted basis of $3,900. Petitioner testified that he would *82 roughly figure the market value of such equipment to be about $4,000. Again, no explanation was given as to how he arrived at that amount. Assuming, however, that the values attributed by petitioner to the physical assets transferred to the corporation are reasonably correct, the problem of determining whether petitioner suffered a loss, and, if so, the amount thereof, is not solved. In the first place, there is no evidence upon which we may determine the good will or going concern value (or the absence of such value) with respect to either of the businesses taken over, although it appears probable that such a value existed. No opinion evidence, earnings data, or other relevant information is to be found in the record. Moreover, there is no reliable evidence of the value of the contract to be procured from Hunter Air Force Base. The importance of this factor is indicated by petitioner's reservation of an option to rescind the arrangement and get back his assets if such contract was not procured within six months or was canceled within six months. It is clear that petitioner placed great emphasis on this option or right, upon which he relied to protect himself from loss. We are *83 not given the terms of the Hunter Field contract which Bowen agreed to procure. The only description is that it was to be "like" that which Bowen held as a sole proprietor, but the terms of Bowen's contract are likewise not included in the record. Petitioner testified that in earlier negotiations with Bowen, a value of $4,500 was attributed to the contract, looking to a credit purchase by petitioner of Bowen's entire business for $8,500. Bowen testified that he did not recall any discussion of value, and, while not expressly contradicting petitioner's testimony, stated that he did not think he would have sold for that amount. In any event, the negotiations fell through. The record contains no explanation, calculation, supporting information, earnings data, or other facts upon which the value of the contract might be determined. As already stated, we do not even have before us the contract or Bowen's predecessor contract. We cannot, under the circumstances, accept petitioner's negotiation figure as a reliable basis for determining such value. Both petitioner and Bowen expressed satisfaction with the transaction between themselves and the corporation, including the amount of stock *84 issued to each. Moreover, there is a reasonable presumption that, in an adversary transaction, the ultimate agreement will appropriately reflect the proportionate interests of the parties. Montgomery Building Realty Co., 7 T.C. 417, 426 (1946). We many reasonably infer, therefore, that when petitioner contributed physical assets which he valued at $18,000, while Bowen contributed physical assets valued at only $4,000, and at the same time petitioner received stock of only $14,900 par value while Bowen received $15,100 par value, Bowen must have contributed something of an intangible nature with a value substantially in excess of $4,500. We are not called upon to speculate upon the intangible values which the corporation received from either petitioner or Bowen, resulting from the going concern value of either or both businesses transferred to the corporation, or from the contract which Bowen agreed to procure. The burden is upon petitioner to support his contentions by acceptable evidence if he is to establish or limit the value of his equity or stock in the corporation as a basis for proving that he in fact suffered a loss as a result of the transaction, and the amount *85 of such loss. Upon the record before us, there is no foundation for a determination that the fair market value of the stock received by petitioner was in fact less than the adjusted basis of the assets he transferred. We must hold, therefore, that he has failed to meet the burden of proving that he suffered a loss, and, if so, the amount thereof. We reach the above conclusion without giving consideration to the employment contract which he received, without which he would not have entered into the transaction. We need merely add that the terms of the contract of employment are not in the record, and that there is no reliable evidence from which we may determine what, if any, fair market value may be attributed to it. If it had a substantial ascertainable fair market value, it would merely serve to further emphasize that petitioner had failed to establish his loss. The interpretation most favorable to petitioner on the issue of the amount of his loss is that the contract of employment had no ascertainable fair market value. In the statutory notice of deficiency, respondent determined additions to the tax as noted above. Petitioners assigned error with respect to the determination *86 of such additions. However, no evidence was introduced in support of their contentions in relation thereto. In their reply brief, petitioners appear to rely solely on the contention that liability for such additions will rise or fall on the basis of our determination with respect to the main issue of whether or not they are entitled to deduct the amount of the loss claimed by them. Since we have decided that issue against petitioners, and since, as above stated, they have offered no evidence relating to such additions to tax, the determination of the respondent must be sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(b) Exchanges Solely in Kind. - * * *
(5) Transfer to corporation controlled by transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under subsection (k) it is not to be considered as "other property or money") shall be considered as stock or securities received by such transferor.↩
2. Ga. Code Ann., Sec. 1831↩ (Supp. 1955).